IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3009-FL

| | | |
|---|---|---|
| BEVERLY VAUGHT, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | ORDER |
| JOHN WILLIAMS INGRAM, V., et al., | ) ) ) | |
| Defendants. | ) ) | |

This matter comes before the court on the motion to dismiss (DE # 33) pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by defendants Brunswick County ("Brunswick County") and the Brunswick County Sheriff's Office ("BCSO"). The matter is ripe for adjudication. For the following reasons, the court grants in part and denies in part defendants' motion.

## STATEMENT OF THE CASE

On January 22, 2010, plaintiff Beverly Vaught ("plaintiff"),[1] as Administratrix of the Estate of Seneca Marrell Vaught ("decedent") filed this action pursuant to 42 U.S.C. § 1983 against the above-named defendants as well as defendants Sheriff John Williams Ingram V ("Sheriff Ingram"),[2] Dustin Riddle ("Riddle"), Karl Scoggins ("Scoggins"), Steven Gerstenmier ("Gerstenmier"),

---

[1] Plaintiff is the mother of the decedent, Seneca Marrell Vaught, and brings this action on behalf of the decedent's estate. (Compl. ¶ 9.)

[2] Sheriff Ingram is the current sheriff of Brunswick County. Sheriff Ronald Hewett was acting sheriff for Brunswick County at the time of the alleged incident. (Compl. ¶ 12.) Sheriff Ingram is being sued in his official capacity only as successor in interest of Sheriff Hewett. (Compl. ¶ 13.)

Western Surety Company ("Western Surety Company"), Southern Health Partners, Inc. ("Southern Health Partners"), and Arlene Stanley ("Stanley"). Plaintiff alleges the following state law claims against Brunswick County and the BCSO: (1) wrongful death arising from willful and wanton negligence; (2) wrongful death arising from negligence *per se*; (3) wrongful death arising from ordinary negligence; (4) injury to a prisoner pursuant to N.C. Gen. Stat. § 162-55; (5) false imprisonment; and (6) violations of the North Carolina Constitution.[3] Plaintiff also alleges a wrongful death claim arising from negligent training and supervision against the BCSO.

On March 19, 2010, Brunswick County and the BCSO filed a motion to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted because Brunswick County may not be held liable for the acts or omissions of a sheriff or his deputies and because the BCSO lacks the capacity to be sued. Plaintiff filed a response to the motion on May 10, 2010, and Brunswick County and the BCSO filed a reply on May 18, 2010. The BCSO filed a notice of subsequently decided authority on August 2, 2010. Brunswick County filed a notice of subsequently decided authority on November 10, 2010.

## STATEMENT OF FACTS

Viewing the facts in the light most favorable to plaintiff, plaintiff makes the following allegations. The decedent had a history of mental illness, including auditory hallucinations, depression, and paranoid schizophrenia. (Compl. ¶ 25.) The decedent was morbidly obese, weighing approximately six hundred fifty (650) pounds, and also had hypertension and possible chronic obstructive pulmonary disease. (Id. ¶ 27.)

---

[3] Plaintiff raised several other claims, including federal claims pursuant to 42 U.S.C. § 1983, against the other defendants in this action. However, the court has only listed plaintiff's claims that are pertinent to the motions to dismiss of Brunswick County and the BCSO.

2

In December 2007, the decedent failed to take his prescribed medications and his mental health deteriorated. (Id. ¶ 29.) On December 25, 2007, the decedent was experiencing hallucinations and was in a delusional state. (Id. ¶ 30.) On that date, plaintiff and the decedent were involved in an incident, in which plaintiff suffered superficial injuries and called 911 to request medical assistance. (Id. ¶ 31.) The BCSO responded to the scene with emergency medical personnel. (Id. ¶ 32.) The decedent then was arrested, taken to the Brunswick County Detention Center, and charged with misdemeanor assault on a female. (Id. ¶ 35.)

While at the detention center, the decedent was supposed to take the following medications: Geodon, Risperdal, Potassium Chloride, Hydrochlorothiazide, Fluxotine, and Risperdal Consta. (Id. ¶ 52.) The decedent's family attempted to deliver certain of his prescription medications to the detention center. (Id. ¶ 53.) The BCSO, however, refused to accept the medications, indicating that all prescriptions would be prescribed and processed through the facility. (Id.) Southern Health Partners records reflect that the only prescriptions given to the decedent were Risperdal, Hydrocholorothiazides, and Potassium Chloride. (Id. ¶ 54.) The decedent's paranoid and auditory hallucinations escalated during his time at the detention center. (Id. ¶ 56.)

On January 23, 2008, at approximately 8:00 p.m., the decedent requested a shower because he had defecated on himself. (Id. ¶ 58.) At approximately, 9:30 p.m. Riddle began to taunt the decedent, stating, "No, you not getting a shower." (Id. ¶ 59.) The decedent became agitated. (Id. ¶ 60.) Then, Riddle and Scoggins called for the decedent's cell to be opened. (Id.) Riddle and Scoggins observed the decedent become increasingly agitated. (Id.) Upon opening the cell door, a brief altercation ensued, and Scoggins sprayed pepper spray into the decedent's face. (Id. ¶ 67.) Almost immediately, the decedent raised both of his hands into the air. (Id.) Despite the decedent's

3

apparent submission, Riddle and Scoggins, with the assistance of three or four other jailers including Gerstenmier, tackled the decedent and positioned him face down. (Id. ¶ 69.) Riddle then placed the decedent in a choke hold and shackled him. (Id.)

Following the altercation, it became apparent that the decedent was in serious need of emergency medical care and attention. (Id. ¶ 75.) Plaintiff states that Stanley watched the altercation, observed the decedent's distress, but did not provide him with medical assistance. (Id. ¶ 79.) At approximately 10:07 p.m., emergency medical services pronounced the decedent dead upon arrival. (Id. ¶ 80.)

## DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . 'unwarranted inferences, unreasonable conclusions, or arguments.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it

4

plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949, and Twombly, 550 U.S. at 557).

B. Analysis

1. Brunswick County

a. Provision of Medical Services

Brunswick County contends that it should be dismissed from this action because it may not be held liable for the acts or omissions of the sheriff or his officers. A county may only be held liable for acts for which it has "final policymaking authority." City of St. Louis v. Proprotnik, 485 U.S. 112, 123 (1988). Whether a county or county official has final policymaking authority in a specific area "is a question of state law." Proprotnik, 485 U.S. at 124. The key inquiry in determining whether a county may be liable for a sheriff's actions is how state law allocates power and responsibility. McMillian v. Monroe County, Ala., 520 U.S. 781, 786 (1997); Knight v. Vernon, 214 F.3d 544, 552 (4th Cir. 2000); Little v. Smith, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000). Accordingly, the court must look to North Carolina State law to determine whether Brunswick County or the Brunswick County Sheriff was responsible for the formulation and execution of policies regarding the treatment of pretrial detainees at the Brunswick County Jail.

Plaintiff argues that her claim against Brunswick County should not be dismissed because N.C. Gen. Stat. § 153A-225 imposes liability for the provision of medical care and emergency services on Brunswick County. In particular, section 153A-225 provides, in pertinent part, that "[e]ach unit that operates a local confinement facility shall develop a plan for providing medical care

5

for prisoners in the facility."[4] N.C. Gen. Stat. § 153A-225. Under N.C. Gen. Stat. § 153A-217(7), "'unit' . . . means a county or city." Accordingly, the language of § 153A-225 appears to impose a duty upon a county to develop a plan for providing medical care. Additionally, North Carolina state law provides that the state has a non-delegable duty to provide medical care to prisoners. See Medley v. N.C. Dep't of Correction, 330 N.C. 837, 842, 412 S.E.2d 645, 657 (1992); State v. Wilson, 183 N.C. App. 100, 103, 643 S.E.2d 620, 622 (2007) (stating the North Carolina Court of Appeals has held "the rationale of Medley is equally applicable to county jails.").

In response, Brunswick County relies, in part, upon the court's previous decision in Scarbro v. New Hanover County, No. 7:03-CV-244-FL(1) (E.D.N.C. May 5, 2004) (unpublished), to support its argument that it should be dismissed from this action. In Scarbro, the plaintiff, the estate of a pre-trial detainee who died while incarcerated, alleged claims of excessive force, inadequate medical care, conspiracy, and supervisor liability pursuant to 42 U.S.C. § 1983, as well as supplemental state law claims of medical negligence and wrongful death. Id. p. 2. The sheriff's department defendants

---

[4] Section 153A-225(a) states in full as follows: "Each unit that operates a local confinement facility shall develop a plan for providing medical care for prisoners at the facility. The plan (1) Shall be designed to protect the health and welfare of the prisoners and to avoid the spread of contagious disease; (2) Shall provide for medical supervision of prisoners and emergency medical care for prisoners to the extent necessary for their health and welfare; (3) Shall provide for the detection, examination and treatment of prisoners who are infected with tuberculosis or venereal diseases.

The unit shall develop the plan in consultation with appropriate local officials and organizations, including the sheriff, the county physician, the local or district health director, and the local medical society. The plan must be approved by the local or district health director after consultation with the area mental health, developmental disabilities, and substance abuse authority, if it is adequate to protect the health and welfare of the prisoners. Upon a determination that the plan is adequate to protect the health and welfare of the prisoners, the plan must be adopted by the governing body.

As part of its plan, each unit may establish fees of not more than ten dollars ($10.00) per incident for the provision of nonemergency medical care to prisoners. In establishing fees pursuant to this section, each unit shall establish a procedure for waiving fees for indigent prisoners."

N.C. Gen. Stat. § 153A-225.

6

moved to dismiss all claims against New Hanover County on grounds that the county had no control or supervisory power over the treatment and care of inmates at the New Hanover County Sheriff's Department. Id. p. 6. The court dismissed the county as a defendant, finding that the plaintiff "pointed to no authority under North Carolina law under which the county, as opposed to the sheriff, would have final policymaking authority in overseeing the interactions between jail personnel and detainees." Id. p. 7. The instant action is distinguishable from Scarbro in that plaintiff in this case directs the court to § 153A-225(a), which appears to vest the county with policymaking authority over the provision of medical care and emergency medical care to county detainees. Accordingly, there is a question as to whether Brunswick County had a duty to provide medical care and emergency services to the decedent that was not met.

Based upon the foregoing, the court finds that plaintiff's claim that Brunswick County failed to provide medical services and emergency medical care pursuant to § 153A-225 survives Brunswick County's motion to dismiss because § 153A-225(a) appears to impose statutory duties on the county for the provision of medical care and emergency medical care. See Ellis v. Bunn, No. 7:08-CV-71-BR, 2008 WL 3876165 (E.D.N.C. Aug. 18, 2008) (unpublished). Thus, Brunswick County's motion to dismiss is DENIED with respect to plaintiff's claims regarding the provision of medical care and emergency services to the decedent.

    b.    False Imprisonment

Plaintiff also seeks to hold Brunswick County liable for the sheriff's alleged false imprisonment. Brunswick County maintains that it is not liable for the decedent's alleged false imprisonment because it may not be held liable for the acts or omission of a sheriff in connection with the sheriff's detention of an inmate.

In North Carolina, the office of the sheriff is a legal entity separate and distinct from the Board of County Commissioners. See N.C. Gen. Stat. § 162-1. The sheriff has final policymaking authority over personnel matters, such as the supervision of the employees in his office. Clark v. Burke County, 117 N.C. App. 85, 89 (1994); N.C. Gen. Stat. § 153A-103. Furthermore, the sheriff has the sole statutory responsibility for the care and custody of the inmates at the county jail. N.C. Gen. Stat. § 162-22. This authority may not be delegated to another person or entity. N.C. Gen. Stat. § 162-24. Accordingly, the sheriff has control over his employees.

Plaintiff states that Brunswick County unlawfully detained the decedent from December 25, 2007 through January 23, 2008. Plaintiff has not presented any authority indicating that Brunswick County retains any final policymaking authority over the detention of pretrial detainees. Instead, it is the sheriff that has control over the supervision of his employees and retains sole statutory responsibility for the custody of inmates at the county jail. See N.C. Gen. Stat. § 162-22. Because the sheriff has exclusive control over the supervision of his employees and retains sole statutory responsibility for the custody of the inmates at the Brunswick County Jail, the court finds that Brunswick County does not have final policymaking authority in connection with an inmate's detention. Thus, the court GRANTS the motion to dismiss plaintiff's false imprisonment claim against Brunswick County.

2.  Brunswick County Sheriff's Office

Plaintiff named the BCSO as a party to this action. "State law dictates whether a [state] governmental agency has the capacity to be sued in federal court." Efird v. Riley, 342 F. Supp. 2d 413, 419-20 (M.D.N.C. 2004) (citing Avery v. Burke, 660 F.2d 111, 113-14 (4th Cir. 1981)). For instance, N.C. Gen. Stat. § 153A-11 acknowledges that a county is a legal entity which may be sued.

8

However, there is no corresponding statute authorizing suit against a North Carolina county's sheriff's department. Accordingly, the BCSO lacks legal capacity to be sued. See Efird, 342 F. Supp. 2d at 420 (dismissing claims against county sheriff's department for lack of capacity); Hill v. Robeson County, N.C., 733 F. Supp. 2d 676, 690 (E.D.N.C. May 20, 2010) (unpublished); see also Moore v. City of Asheville, 290 F. Supp. 2d 664, 673 (W.D.N.C. 2003), aff'd, 396 F.3d 385 (4th Cir. 2005) (dismissing claims against city police department for lack of capacity). Based upon the foregoing, the BCSOs' motion to dismiss plaintiff's claims against it is GRANTED.

## CONCLUSION

For the foregoing reasons, the motion to dismiss (DE # 33) filed by Brunswick County and the BCSO is GRANTED in part and DENIED in part. The motion is granted with respect to plaintiff's claims against the BCSO and plaintiff's false imprisonment claim against Brunswick County. The motion is DENIED with respect to plaintiff's claims against Brunswick County arising out of the provision of medical services and emergency medical services to the decedent.

SO ORDERED, this the 24 day of February, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge